**YEE DAI SHEK, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 75–2153.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1976.

Decided Sept. 27, 1976.

Jack Wasserman, Washington, D. C. (Wasserman, Orlow, Kaye & Rubin, Washington, D. C., on brief), for petitioner.

John E. Harris, Atty., Crim. Div., Dept. of Justice, Washington, D. C. (B. Franklin

Taylor, Acting Chief, Government Regulations Section, Crim. Div., and James P. Morris, Atty., Dept. of Justice, Washington, D. C., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and BUTZNER, Circuit Judge.

BUTZNER, Circuit Judge.

Yee Dai Shek petitions for review of an Immigration and Naturalization Service order refusing to reopen deportation proceedings against him. We remand and direct that the proceedings be reopened to consider evidence on the question of whether Shek should be allowed to depart the United States voluntarily.

Shek entered the United States on March 18, 1969, as a seaman. He was authorized to stay no more than 29 days and was required to leave with his ship, but he has been here ever since. In order to escape detection, he told United States authorities that he was an American citizen. Shek was arrested on December 10, 1973. At the time he was earning $80 a week as a cook in a Chinese restaurant but he had never filed a United States income tax return. On tax withholding forms provided by his employers, he illegally claimed a brother and two sisters in Hong Kong as dependents. Except for an uncle, Shek had no relatives in this country. He was, however, engaged to marry Brenda Ching, a resident alien who was in the process of becoming a citizen.

These facts were disclosed in a hearing before an immigration judge on January 8, 1974. At that hearing Shek conceded that he was deportable but asked that he be allowed to depart voluntarily.[1] The immigration judge denied his request, stating:

"In view of the fact that the respondent deliberately attempted to deceive officers of the Immigration Service, has failed to file income tax returns and is indebted to the United States government, in view of the further fact that this is his very first entry into the United States, and he is not a seaman by profession having only been employed in that capacity for four months, and having no immediate ties in the United States, nor anyone dependent upon him for support, I find no reason to grant him voluntary departure; and, therefore, as a matter of discretion, it will be denied."

Shek married Brenda Ching on February 11, 1974, and on March 5, 1974, asked the Board of Immigration Appeals to reopen the deportation proceedings. The Board denied the motion to reopen on October 10, 1974, relying on the reasons stated by the immigration judge. With respect to the new evidence that the immigration judge did not have an opportunity to consider, the Board said:

"In support of the motion to reopen, counsel advises that the respondent is now married to a permanent resident alien and that his spouse has filed a visa petition in his behalf. No statement has been made that such visa petition has been approved. We conclude that no additional facts have been provided to meet the requirements for reopening. . . ."[2]

Shek filed another motion to reopen on December 16, 1974. In a supporting affidavit he stated that his wife, now a naturalized citizen, and his child born on November 19, 1974, and a citizen of the United States, were totally dependent upon him. He also asserted that his failure to file income tax returns was not willful and that he was willing to pay any taxes that he owed. After the Board heard argument, but before it ruled on his petition, Shek submitted an affidavit stating that he had paid his back taxes for 1973 and 1974.[3]

---

1. *See* 8 U.S.C. § 1254(e). An alien who has been deported may not receive a visa to return to the United States unless he first obtains permission from the Attorney General to reapply. 8 U.S.C. § 1182(a)(17). An alien who has been allowed to depart voluntarily is spared this requirement. *Id.; see Tzantarmas v. United States,* 402 F.2d 163, 165 n. 1 (9th Cir. 1968).

2. The Immigration Service approved a visa petition on May 16, 1976, while this appeal was pending.

3. It appears from the record that Shek has as yet been unable to determine whether he owes any taxes for the years before 1973.

On September 25, 1975, the Board denied the motion to reopen. Its written opinion stated:

"On October 10, 1974, we dismissed the respondent's appeal from an order of an immigration judge dated January 8, 1974, finding the respondent deportable as charged and denying his application for voluntary departure. At the same time we denied the respondent's motion to reopen the proceedings. Now counsel moves to reopen the proceedings to permit the respondent to apply anew for the privilege of voluntary departure. The Service is opposed to the grant of the motion.

"In the motion papers counsel claims that the respondent is married to a United States citizen and that a visa petition had been filed on his behalf by his citizen spouse.

"We have reviewed the motion papers and conclude that reopening of the proceedings is not warranted on the basis of the allegations contained in counsel's motion."

One member dissented, explaining that:

"The respondent has again requested reopening to apply for voluntary departure. As basis for reopening he claims that he was married on February 11, 1974, to Brenda Ching, who became a United States citizen through naturalization in April 1974, and that he is the father of a United States citizen child born November 19, 1974. He states that his wife has filed a visa petition in his behalf. He also seeks an opportunity to present evidence showing that he is straightening out his tax matters with the Internal Revenue Service.

"In my opinion the proceedings should be reopened, and the respondent's application for the only discretionary relief available to him should be considered in the light of the evidence submitted. The adverse factors, on which denial was previously based should be balanced against the equities in the case, and a new decision entered."

The Board of Immigration Appeals has discretion to either grant or deny a motion to reopen a deportation proceeding. *La Franca v. Immigration and Naturalization Service,* 413 F.2d 686, 690 (2d Cir. 1969). Our review of the Board's action is limited to determining whether there has been any abuse of its discretion. *Foti v. Immigration and Naturalization Service,* 375 U.S. 217, 228, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963). The Board, like any other administrative agency, must act in accordance with its own regulations, and failure to do so is an abuse of discretion. The Immigration and Naturalization Service regulations pertaining to reopening of a Board decision provide in part:

"Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . ." 8 C.F.R. § 3.2.

Therefore, in reviewing the Board's decision, we must examine Shek's proffered evidence to determine whether it is both new and significant. *See Acevedo v. Immigration and Naturalization Service,* 538 F.2d 918, No. 75–4246 (2d Cir. 1976); *La Franca v. Immigration and Naturalization Service,* 413 F.2d 686, 690 (2d Cir. 1969).

It is undisputed that the evidence of Shek's marriage and the birth of his child could not have been presented to the immigration judge, since these events occurred after the deportation hearing. By the Board's own standards, this evidence is significant. In deciding whether to grant voluntary departure, the Board has previously considered such factors as marriage to a citizen and the birth of a child who is a citizen occurring after the beginning of deportation proceedings. *See Matter of T,* 5 I. & N. Dec. 736 (1954). This is entirely consistent with Congressional concern over "keeping families of United States citizens and immigrants united." *See Immigration and Naturalization Service v. Errico,* 385 U.S. 214, 220 n. 9, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966).

The Board's opinion declining to reopen does not mention the birth of the child, and it leaves unclear whether the Board recognized the validity of Shek's marriage or assumed that his claim was specious. Since the new evidence, if true, would be significant, we conclude, in agreement with the dissenting member of the Board, that the proceedings should be reopened so that Shek's present situation can be fully evaluated.

Accordingly, the petition for review is granted and the case is remanded to the Board of Immigration Appeals for further proceedings.

BRYAN, Senior Circuit Judge (dissenting):

Deceit and deception have been the warp and woof of the appellant's design to obtain permanent residence in the United States. His fraud discovered, he now unashamedly asks for "voluntary departure" so he can reenter this country without procuring the permission of the Attorney General—in order, it is not unlikely, that he may again cheat the United States. A welcome freshening breath is the truth of his conduct as revealed unstintingly in the majority's statement of the facts.

Appellant suggests that his marriage to a newly admitted citizen, a former national of his native country, and the birth of their child entitled him to an award of voluntary departure. In this he presses the hardship of the wife and child upon his separation from them should he be required to pursue an honest course for entry. If we are persuaded by such arguments, he has established for aliens an imitable pattern of circumvention by all such aliens of the Acts of Congress relating to admission for permanent residency. True, today's decision does not purport to accord appellant voluntary departure, but it does give him "a leg up" on his override of the immigration authorities. At least, it allows him to parlay his fraud into another year of illegal stay—to a total eight years.

I do not overlook the entitlements of a wife and child. Even assuming his absence would mean the absence of a good influence for the child and mother, a like deprivation follows wherever a parent is imprisoned for an offense. The courts have not yet felt bound to withhold such punishment on this score, particularly when the offense has been so studied and extensive as here. To do otherwise would reduce the public's protection by the law to a sentimental concept.

Besides, the remand now ordered amounts to but a procedural formality, unneeded in fact and unnecessary in law, putting ceremony above substance. To begin with, the immigration judge and the Board of Appeals when deciding against the appellant were aware of the developments he now seeks to rehearse before them. It is certain *we* know of them. In similar administrative proceedings we have deemed it due process if we determine their effect without a remand to the agency—in other words, if we do what the agency should have done. *Horton v. Orange County Board of Education,* 464 F.2d 536, 538 (4 Cir. 1972).

As I think seven years of fraud is adequate tolerance, I would at once affirm the judgment now on appeal. *Cf. Acevedo v. Immigration and Naturalization Service,* 538 F.2d 918 (2 Cir. 1976, No. 75–4246).